*Court of Common Pleas, Dauphin County, October 1st, 1856.*

FINNEY *v.* FINNEY ET AL., EXECUTORS OF FINNEY.

When an agreement to pay a claim by some of the heirs against an estate is made by executors, signed by some of them unconditionally, and by another, with the condition, that it shall be signed by all the heirs of the deceased, though never so signed, it is binding upon all the other executors and their personal representatives, and upon him, also, if assented to by all the heirs, except those for whose benefit the agreement was made, as their assent can be presumed.

When a joint instrument is drawn to be signed by several, and one fails to sign, all are discharged. It is otherwise in the case of a joint and several instrument, a security for an antecedent debt, or when the parties signing knew that fewer than the whole number were to sign it.

The words in a will, " All my money and movables" will not devise such a chose in action as a claim against an estate. (Sharp *v.* The United States, 4 Watts, 21, distinguished.)

BY THE COURT.—From the facts stated in this case, we collect, that before the writing on which the cause mainly turns was en-

[Finney v. Finney et al., Executors of Finney.]

tered into, Elizabeth, Susan, and Ann Finney, each had a claim for services rendered to James B. Finney in his lifetime.   The writing appears to have been drawn with a view to the establishment and recognition of these claims.   None of the obligors bind themselves individually, but merely agree that the money shall be paid out of James B. Finney's estate.   The contract is drawn with a view to the joint obligation of the three brothers, and was doubtless expected to be signed by all.   It was unconditionally signed by Thomas and George W.; but Samuel S. appended a condition to his signature, that "the same shall be agreed to and ratified by all the heirs-at-law, or persons interested in the estate of James B. Finney," including the claimants.   It seems that Elizabeth Finney died within fifteen days after the agreement was signed by Samuel, without having affixed her hand and seal to any ratification of the agreement, as required; and Thomas Finney also died on the 14th of May, following, before any of the other heirs-at-law of James B. Finney, or either of his three sisters, had signed the ratification.   All of the heirs, including Samuel S. Finney and the two surviving sisters, ratified the agreement by writing under their respective hands and seals on the same day that Thomas died.   Two questions are presented by this state of facts.   First. Is the writing binding on Thomas Finney's legal representatives? Second. Is it binding on Samuel S. Finney ?   It is pretty clearly settled, that if a joint obligation be drawn in a form to be signed by several, the names of all being stated in the body of the instrument, and fewer than the whole number execute it, those signing are not bound, unless it appears that they knew and understood that fewer than the whole might become bound.   This may be shown and explained by parol.  . The reason is, that a joint obligation is more onerous on two than on three.   On the other hand, where the instrument is joint and several, as each undertakes for the whole, no additional burden is thrown upon the two by the third one failing to become bound.   So far as we know, the doctrine has rarely been permitted to have a practical application except in cases of sureties.   Cases are reported in our own books, where bonds have been drawn to be signed by several as sureties, and a fewer number sealed the instrument, all have been discharged.   I have not been able to find any case where the doctrine was invoked in aid of principles; and it most unquestionably could not be done successfully, provided the obligation was given for an antecedent debt.   All being bound before, no one is placed in a worse condition, or injuriously deceived by reason of the instrument being prepared in that particular form.   In the case under consideration it is conceded, that a debt was due by James B. Finney to each of his sisters, on account of "important services rendered in his lifetime;" and in consideration thereof, Thomas, George, and Samuel agree to pay the sum of one thousand

[Finney *v.* Finney et al., Executors of Finney.]

dollars to each of the sisters *out of the estate of James.* The contract is not personally binding upon either of the three brothers, further than the money can be obtained from the estate of the deceased brother, to whom they are heirs. Taking the whole writing, in connection with the form of judgment to be entered by the court if it is obligatory, I consider it no more than the admission of a valid pre-existing debt against James B. Finney's estate, and authority to the administrator thereof to pay the money to the claimants, without objection on the part of the heirs; and in that point of view binding on Thomas and George, so far as their interest was concerned, whether signed by Samuel or not. Thomas and George would have been estopped by that writing from objecting to the payment of those claims by the administrator of James, whether Samuel assented or objected. The only difficulty which could have been raised in their behalf, would have been, how much can be deducted from their shares? whether the whole three thousand dollars or only their ratable proportion thereof? But that question never can arise, as all of the heirs have since lent the agreement their sanction, by ratifying it under their hands and seals; and the form of that ratification, or the want of the signature by Elizabeth, cannot be objected to by them. They did not stipulate for it, but bound themselves absolutely and unconditionally. We should have said without hesitation, that the signature of Elizabeth was unimportant, as it must be presumed that she would be willing to accept her debt, and ratify the arrangement; but the plaintiff has herself declared that she is ignorant as to whether Elizabeth would, or would not do it. Every one is presumed to be willing to accept a manifest benefit; but we cannot presume in favor of what the plaintiff says she does not know. This can only be important under the condition annexed to the signature of Samuel S. Finney. We consider the estate of Thomas Finney bound by the agreement. It is entirely unlike the case of Sharp *v.* The United States, 4 Watts, 21, where an act of Congress required two sureties to a bond, which was prepared to be signed accordingly, but only one person of the two named signed the instrument; it was held not to be obligatory upon him without explanation. He had a right to expect that the other persons named as co-sureties would sign, and be willing to bind himself with another; but not to stand alone as bail. In Bean *v.* Parker (17 Mass. 591), it is said that an instrument intended to be signed by several is not good when executed by one alone. But in that case the bond was prepared for a principal and two sureties, and the former omitted to sign it. Moreover, it was an arbitration bond, and in the nature of an instrument *creating* a debt; that in the present case merely acknowledges one pre-existing. Fertig *v.* Bucher (3 Barr, 308) was a conditional delivery, stipulating for the signature of others, who did not sign the instrument; of course,

[Finney v. Finney et al., Executors of Finney.]

it was not binding; it was delivered contrary to the arrangement under which it was given. We come to the second point. Is this binding on S. S. Finney? It is unquestionably true that where a party signs a contract on condition, it is his right to have the condition substantially and strictly performed. S. S. Finney stipulates for the assent of his three sisters to have the debt they claimed, paid out of J. B. Finney's estate. · This appears to us to be an absurdity, as taking the money, without more, would be sufficient evidence of assent; but so the terms are written. Besides, where an act is manifestly for a party's benefit, acquiescence will be presumed. If this case were trying before a jury, we should feel bound to instruct it to presume that Elizabeth would have signed, had she lived, and is excused by death from a literal compliance. The law will excuse from that which is vain or impossible. At most the paper would only require the signature of her administrator to place it beyond doubt. We are excused from passing on this question, as S. S. Finney, by his signature since his sister's death, and when he knew that she could not personally sign the paper, affixed his own name and seal to the instrument. This binds him; and as the case conceded that the names appended to the instrument embrace all the heirs of J. B. Finney, deceased, the condition is performed, and S. S. Finney bound by it. Therefore, the plaintiff is entitled to judgment against him. From the will of Elizabeth Finney being made part of the case, we conjecture that it was thought that the signature of her sisters, as her devisees, would dispense with that of an administrator *cum testamento annexo*. Even if they were the devisees of this debt, it probably could not have that effect, but a legal representative of the estate would have to be raised. In our opinion, there is nothing in the words of the will devising the claim against the estate of James B. Finney to them, but it will go to her heirs-at-law. "All my money and movables" will not carry a chose in action, such as this. Negotiable paper has been so far treated as money as to be permitted to pass by such a bequest, but not bonds, book-accounts, or other choses in action. Nor will claims pass by a bequest of all my movables. The authorities examined are full and clear on both points. This claim, when collected, goes to all of her brothers and sisters as her heirs-at-law. Judgment is rendered in favor of the plaintiff on the case stated against both the defendants agreeably to the terms of the case.

*Fisher, for plaintiff.*

*Alricks, for defendant.*